# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

BRANDONLYN NUNLEY, individually
and as parent of TJN, a minor,

        Plaintiffs,

vs.

OFFICER NICHOLAS J. ERDMANN,
IOWA HIGHWAY PATROL, JOHN
DOE AND JANE DOE 1-10,

        Defendants.

No. C14-4016-MWB

**REPORT AND
RECOMMENDATION ON
MOTION TO DISMISS**

---

## *TABLE OF CONTENTS*

I.     **INTRODUCTION**................................................................. 2

II.    **NUNLEY'S FACTUAL ALLEGATIONS** ................................ 4

III.   **APPLICABLE STANDARDS** ........................................... 6

IV.   **ANALYSIS** ..................................................................... 8
     **A.**   **Can Nunley Bring Claims on Behalf of Her Minor Child?** ................ 8
     **B.**   **Can Nunley Pursue Claims Against the Iowa State Patrol Under
          Section 1983?**.......................................................... 9
     **C.**   **Can Nunley Pursue Her State Law Claims In This Court?** .............. 12
     **D.**   **Should Counts I, II, IV, V, VI and VII Be Dismissed For Failure
          to State a Claim?**............................................................ 18
          **1.**   **Counts I and II** ......................................................... 18
          **2.**   **Count IV** ................................................................. 24
          **3.**   **Count V** ................................................................. 26
          **4.**   **Counts VI and VII** ................................................... 28

V.     **CONCLUSION AND RECOMMENDATION**...................... 29

# I. INTRODUCTION

Plaintiff Brandonlyn Nunley (Nunley), individually and as parent of TJN, a minor, commenced this lawsuit on February 28, 2014. She filed her *pro se* complaint against Officer Nicholas Erdmann (Erdmann), Iowa Highway Patrol[1] and John and Jane Does 1-10 on April 24, 2014, asserting the following claims under 42 U.S.C. § 1983:

| | | |
|---|---|---|
| Count I | Violation of Plaintiff's Fourth Amendment Rights | |
| Count II | Violation of Plaintiff's Fourth Amendment Rights | |
| Count III | Violation of Plaintiff's Fourth Amendment Rights-Excessive Force | |
| Count IV | Violation of Plaintiff's Due Process Rights | |
| Count V | Violation of Right to Family Integrity | |
| Count VI | Supervisory Liability-Policy of Unconstitutional Acts (against all Iowa Highway Patrol supervisors involved in present case) | |
| Count VII | Supervisory Liability-Failure to Train (against all Iowa Highway Patrol supervisors involved in present case) | |

Doc. No. 4. Nunley also asserts the following state tort claims:

| | | |
|---|---|---|
| Count VIII | Battery (against all defendants) | |
| Count IX | Malicious Prosecution (against Erdmann) | |
| Count X | False Arrest (against Erdmann) | |
| Count XI | Abuse of Process (against all "police defendants") | |

---

[1] Defendants point out that there is no entity within the Iowa state government known as the "Iowa Highway Patrol" but acknowledge there is an "Iowa State Patrol" that is a division of the Iowa Department of Public Safety and "primarily regulates the orderly flow of traffic on the state's highways." Doc. No. 8-1 at 2 n.1 (citing Iowa Admin. Code § 661-1.2(2)). I will refer to this defendant as the "Iowa State Patrol."

<table>
<tr><td>Count XII</td><td>Intentional/Negligent Infliction of Mental Distress (against all defendants)</td></tr>
</table>

*Id.* She seeks compensatory and punitive damages for all claims.

On June 6, 2014, all defendants filed a motion (Doc. No. 8) to dismiss in which they request dismissal of:

a. All claims brought on behalf of plaintiff's minor child

b. All claims brought against the state of Iowa and all of its instrumentalities

c. Counts VIII through XII

d. Counts I, II, IV, V, VI and VII

Doc. No. 8.[2] Nunley filed an initial resistance (Doc. No. 15) on August, 11, 2014, and then filed a motion (Doc. No. 16) for additional time to file a supplemental resistance. Defendants filed a reply (Doc. No. 17) to the initial resistance on August 18, 2014.

On August 21, 2014, I granted (Doc. No. 20) Nunley's motion for additional time to file a supplemental resistance. Instead of filing a supplemental resistance, however, she filed an Amended Complaint and Jury Demand (Doc. No. 21) without filing a motion for leave to amend. Because Nunley did not obtain leave to amend, I entered an order (Doc. No. 22) on September 23, 2014, striking the Amended Complaint and Jury Demand while advising Nunley that she could re-submit the proposed amendment with an appropriate motion. She has not done so.

The Honorable Mark W. Bennett has referred the defendant's motion to dismiss to me for the preparation of a report and recommended disposition. No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is now fully submitted.

---

[2] The motion was filed on behalf of all defendants, including John and Jane Does 1-10. Doc. No. 8. The docket reflects no effort by Nunley to identify and name these unidentified defendants.

## II.    NUNLEY'S FACTUAL ALLEGATIONS

Nunley alleges that on September 16, 2012, she was driving on a public highway in Iowa with her 2-year-old son, TJN, when Erdmann stopped her – apparently because he believed she was not wearing a seatbelt.  Nunley makes no allegation as to whether or not she was, in fact, wearing a seat belt.   In any event, she alleges that Erdmann approached the vehicle on the passenger side and asked for Nunley's driver's license, insurance and vehicle registration.  Nunley provided the registration for the vehicle and explained she was borrowing it from a friend.  She stated she had forgotten her driver's license, but provided her name and birth date, hoping that Erdmann could look it up in his vehicle.  She also indicated she was disabled.

Erdmann moved to the driver's side of the vehicle and asked Nunley to contact the vehicle's owner on her cell phone.  Nunley proceeded to call her friend.  When the friend picked up, Erdmann reached through the window and grabbed the cell phone out of Nunley's hand.  Nunley was shocked and upset and told Erdmann she did not think his actions were justified.  Erdmann then asked for the keys to the vehicle.  Nunley began to partially close the window to shield herself from further physical contact with Erdmann when he reached through the window, unlocked the door and attempted to take the keys.  This resulted in further physical contact with Nunley.   While reaching through the window, Erdmann opened the door and Nunley got out to retrieve her phone.  Erdmann wrapped his arm around Nunley's head and right shoulder and said "come here, come here."  He threw her face down on the gravel, placed his lower legs and knees on her head and forced her head into the ground.

Erdmann took a prolonged time to handcuff Nunley and place her in a backup law enforcement vehicle.  Nunley alleges her face was bleeding profusely and Erdmann deliberately avoided the dash camera on his vehicle.  Erdmann was not hurt or physically harmed during the incident.

Once other officers arrived, Erdmann admitted he had checked the computer in his vehicle and determined Nunley had a valid driver's license. Another officer indicated that Nunley was known in the area and had been involved in a serious car accident which caused her head trauma and poor memory. TJN had been left unsupervised in his child seat with the driver's door open until Erdmann contacted Nunley's father to come pick up TJN.

Nunley was transported to the county jail and incarcerated overnight. The next morning, a jail officer observed Nunley and commented on her bruising. Nunley was charged with "Interference with Official Acts Causing Injury."[3] She was required to attend two court hearings. The Interference with Official Acts charge was dismissed with prejudice because, according to Nunley, "the charge was baseless and could not be justified under any reasonable interpretation of the events."[4]

Nunley alleges she suffered "serious, deep and extensive abrasions to her eyebrow, upper cheek and lower cheek" which are documented by photographs taken shortly after the incident. Doc. No. 4 at 7. She also alleges she suffered "extensive contusions over the rest of her body including her upper left arm between her elbow and shoulder." *Id.* Nunley makes other allegations which will be addressed, as necessary, during the discussion of her specific claims.

---

[3] Defendants point out that Nunley was also charged with failure to maintain safety belt in violation of Iowa Code § 321.445, which arose out of the same traffic stop. They contend that in considering the motion to dismiss the court may take judicial notice of this fact and related facts as reflected in public records. Doc. No. 8-1 at 3-4 (citing *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003)). Nunley was found guilty of the safety belt violation on January 29, 2013.

[4] Defendants note that the county attorney filed a motion to dismiss this charge stating that "prosecuting this matter will not be an appropriate use of judicial resources." Doc. No. 8-2.

## III. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)). While *factual*

"plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In deciding a motion brought pursuant to Rule 12(b)(6), the court may consider certain materials outside the pleadings, including (a) "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)), and (b) "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Thus, the court may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller*, 688 F.3d at 931 n. 3 (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).[5]

Finally, when a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within twenty-one days. *See* Fed. R. Civ. P. 15(a)(1). Thus, when a motion to dismiss highlights deficiencies in a

---

[5] In support of their motion, defendants rely in part on docket entries and filings in two criminal cases that resulted from the traffic stop at issue in this case. Doc. No. 8-1 at 4. Nunley has not objected to my consideration of these materials and I find them to be matters of public record that are properly considered in analyzing defendants' motion.

pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include "whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile." *Meighan v. TransGuard Ins. Co. of Am., Inc.*, 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).


## IV. ANALYSIS

Defendants raise four arguments:

    a.    Nunley cannot prosecute civil claims on behalf of her child.

    b.    The State of Iowa is not a "person" susceptible to suit under 42 U.S.C. § 1983 and is immune from suit under the Eleventh Amendment to the United States Constitution.

    c.    This Court does not possess supplemental authority to adjudicate any state tort claims. Even if this Court possessed such authority, any such claim would be precluded by Iowa Code Section 669.

    d.    Counts I, II, IV, V, VI and VII should be dismissed for failing to state a claim.

I will address each separately below.


## A. Can Nunley Bring Claims on Behalf of Her Minor Child?

In her complaint, Nunley lists herself and TJN, her minor child, as plaintiffs in this suit. Doc. No. 4 at 2. Defendants allege a *pro se* plaintiff who is not an attorney cannot litigate claims on behalf of his or her child and point out that Nunley is not listed

in a database of Iowa's licensed attorneys. Defendants also note that is not entirely clear from Nunley's complaint which claims she raises on behalf of herself and which she is raising for TJN, but argue that any counts raised on behalf of TJN must be dismissed.

"[N]on-attorney parents generally may not litigate the claims of their minor children in federal court." *Myers v. Loudoun Cnty. Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005) (citing cases in other circuits). *See also Buckely v. Dowdle*, No. 08-1005, 2009 WL 750122, at *1 (8th Cir. Mar. 24, 2009) (per curiam) (noting *pro se* plaintiff could not bring a claim on behalf of his minor daughter and citing *Myers*). While there are some situations in which parents may bring *pro se* claims on behalf of their children - such as an application for Social Security benefits - "no comparable exception has ever been recognized for a lawsuit based on § 1983 or general state tort law." *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010).

Nunley's complaint does not allege that she is a licensed attorney, nor has she suggested otherwise in resisting defendants' motion. As a non-attorney parent she may not assert claims on behalf of her minor child. Moreover, I find that it is unlikely that Nunley can cure this legal defect by amendment. As such, I recommend all claims asserted on behalf of Nunley's minor child, TJN, be dismissed without prejudice.

**B.    *Can Nunley Pursue Claims Against the Iowa State Patrol Under Section 1983?***

Defendants next argue that all claims against the Iowa State Patrol must be dismissed because, as an agency of the state, (a) it is not a "person" as defined in 42 U.S.C. § 1983, and (b) it is immune from suit under the Eleventh Amendment of the United States Constitution. I will address these arguments separately.

**1.    *"Person"***

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or

causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court addressed the scope of Section 1983 as it relates to actions against state agencies and officials. The Court noted that the scope of Section 1983 and the scope of the Eleventh Amendment are separate issues. *Id.* at 66. However, the Court further explained that in enacting Section 1983, "Congress did not intend to override well-established immunities or defenses under the common law." *Id.* at 67. With this in mind, the Court held that "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71; *see also Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.").

Because the Iowa State Patrol, as an instrumentality of the State of Iowa, is not a "person" within the meaning of Section 1983, I recommend that all claims brought against it pursuant to Section 1983 be dismissed without giving Nunley the opportunity to replead those claims.

### 2. *Eleventh Amendment*

Alternatively, it is clear that the Iowa State Patrol is entitled to immunity under the Eleventh Amendment to the United States Constitution. This amendment provides:

The Judicial power of the United States shall not be construed
to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of
another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. "The Eleventh Amendment can bar federal actions by private parties against a state unless it has waived its immunity or Congress has abrogated it in a

valid exercise of power under the enforcement clause of the Fourteenth Amendment."

*In re Rose*, 187 F.3d 926, 928 (8th Cir. 1999). This immunity extends to state officials when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).[6]

Nunley has not alleged waiver or abrogation. As I will discuss further, *infra,* with regard to Nunley's tort claims, the Iowa Tort Claims Act (ITCA) does not constitute a waiver of the State of Iowa's Eleventh Amendment immunity. *See Cooper v. St. Cloud State University*, 226 F.3d 964, 969 (8th Cir. 2000) ("A State is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.") [internal quotations omitted]; *see also Jacobsen v. Dept. of Transp.*, 332 F. Supp. 2d 1217, 1229-30 (N.D. Iowa 2004) ("the court cannot conclude that the State of Iowa has waived its Eleventh Amendment immunity in the Iowa State Tort Claims Act since that act does not expressly specify the state's intent to subject itself to suit in federal court.").

Nor did Congress abrogate Eleventh Amendment immunity in enacting Section 1983. *See Will*, 491 U.S. at 67 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."). The Iowa State Patrol is entitled to immunity under the Eleventh Amendment. I therefore recommend that all claims brought against it pursuant to Section 1983 be dismissed for this reason, as well, without the opportunity to replead.

---

[6] The Supreme Court recognized a limited exception to this rule in *Ex Parte Young*, 209 U.S. 123 (1908), permitting actions against state officials when a plaintiff seeks prospective injunctive relief for violations of federal law. For the exception to apply, the complaint must allege an ongoing violation of federal law and seek prospective relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). This exception does not apply here, as Nunley seeks only damages for past alleged violations.

*C.*    *Can Nunley Pursue Her State Law Claims In This Court?*

Counts VIII through XII assert state law tort claims against some or all of the defendants.  Those claims are battery, malicious prosecution, false arrest, abuse of process and intentional/negligent infliction of mental distress.  Defendants make several alternative arguments based on the ITCA.  They contend that all of Nunley's state law claims are subject to the ITCA and, as a result, those claims must be dismissed because: (a) this court has no subject matter jurisdiction over them, (b) Nunley did not exhaust administrative remedies and (c) the State of Iowa has not waived its sovereign immunity for such claims.  I will first address the question of whether the ITCA applies to all of Nunley's claims.  I will then consider the effect of the ITCA on those claims.

*1.*    *To What Extent Does The ITCA Apply?*

The Iowa Supreme Court recently explained the historical context of the ITCA as follows:

> The doctrine of sovereign immunity originally prohibited tort suits against the State of Iowa.  *Hansen v. State*, 298 N.W.2d 263, 265 (Iowa 1980).  Sovereign immunity also applied to governmental subdivisions.  *See, e.g., Canade, Inc. v. Town of Blue Grass*, 195 N.W.2d 734, 736 (Iowa 1972) (recognizing the rule of governmental immunity applied to a claim of negligence against a municipality).  This immunity was jurisdictional; thus, the courts lacked jurisdiction over tort actions against the State or its agencies.  *Lloyd v. State*, 251 N.W.2d 551, 555 (Iowa 1977).  In 1965, the general assembly enacted the Iowa Tort Claims Act and thereby waived the State's sovereign immunity for certain tort claims against the State.  *See* 1965 Iowa Acts ch. 79 (codified at Iowa Code ch. 25A (1966), current version at Iowa Code ch. 669).

*Godfrey v. State*, 847 N.W.2d 578, 582 (Iowa 2014).  The Court then noted that even before the ITCA's enactment, government employees could be sued in their personal capacities for torts committed while acting outside the scope of their employment.  *Id.* at 583.  Thus, only those torts committed by state employees acting within the scope of employment are governed by the ITCA.  *Id.* at 588.

Here, and unlike the plaintiff in *Godfrey,* Nunley does not allege that Erdmann or any of the unnamed individual defendants were acting outside their employment when they committed the alleged torts. Indeed, she expressly alleges that "[d]uring all times mentioned in this complaint, the Defendants and each of them were duly appointed state and local employees acting in their official capacities." Doc. No. 4 at 8. Therefore, Nunley's tort claims against the individual defendants in this case are governed by, and subject to, the ITCA. *See Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996) (holding that various tort claims against state employees fell within the ambit of the ITCA because plaintiff failed to allege that they were acting outside the scope of employment). This means Nunley can pursue those claims here only to the extent, if any, permitted by the ITCA.

### 2.     *What Effect Does The ITCA Have On Nunley's Claims?*

Defendants argue that the application of the ITCA to Nunley's state law tort claims means those claims must be dismissed for the following, alternative, reasons: (a) this court is not the proper forum for those claims, (b) Nunley failed to exhaust administrative remedies and (c) the ITCA retains sovereign immunity over the specific claims at issue. I will address each reason separately.

#### a.     *Forum*

The ITCA provides:

> The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court has exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter.

Iowa Code § 669.4. This court has recognized that "[t]he plain language of section 669.4 limits waiver of Iowa's sovereign immunity to lawsuits brought in Iowa state courts."

*Jacobsen*, 332 F. Supp. 2d at 1229-30. This court then held that such a limited waiver is permissible:

> [A] state may waive its common law sovereign immunity under state law, without waiving its Eleventh Amendment immunity under federal law. This is precisely the situation with the Iowa State Tort Claims Act.

*Id.* at 1230. As such, the court dismissed claims brought in federal court against the Iowa Department of Transportation and various state officials in their official capacities. *Id.*

The same outcome is required here. The ITCA waives Iowa's sovereign immunity only with regard to actions brought in Iowa's state courts. Iowa Code § 669.4. Iowa has not waived its Eleventh Amendment immunity. Because Nunley's state law tort claims are asserted against an instrumentality of the State of Iowa, and against state employees acting in their official capacities, those claims cannot proceed in this court.

### b. *Exhaustion*

Defendants next argue that even if Nunley could pursue her tort claims in this court, the ITCA creates administrative remedies that must be exhausted as a condition of filing suit. First, a claimant must file a claim with the Director of the Department of Management. *See* Iowa Code § 669.3(2). The claim is then considered by the Attorney General, who will make a final disposition. *See* Iowa Code § 669.5(1) ("A suit shall not be permitted for a claim under this chapter unless the attorney general has made final disposition of the claim."). The claim must then be presented to the State Appeal Board before the claimant may file a petition in the district court. *Minor v. State*, 819 N.W.2d 383, 405 (Iowa 2012). "Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction." *Id.* (quoting *In re Estate of Voss*, 553 N.W.2d 878, 880 (Iowa 1996)).

Here, neither Nunley's complaint nor her resistances to the motion to dismiss even arguably suggest that she exhausted her administrative remedies under the ITCA before commencing this action. This provides another, independent basis for recommending dismissal of Nunley's state tort claims.

### c. *The Intentional Tort Exception*

While the ITCA waives the State of Iowa's sovereign immunity with regard to certain claims, it retains that immunity as to others. For example:

> The provisions of this chapter shall not apply with respect to any claim against the state, to:
>
> * * *
>
> 4.      Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

Iowa Code § 669.14(4). This is sometimes referred to as the "intentional tort exception." *Minor,* 819 N.W.2d at 406. Based on this statutory exception, defendants contend they have immunity as to all of Nunley's state law claims because those claims are either (a) specifically listed in Section 669.14(4) or (b) the "functional equivalent" of listed claims. Doc. No. 8-1 at 10.

Four of Nunley's state law tort claims (battery, malicious prosecution, false arrest and abuse of process) are expressly enumerated in the ICTA as claims for which the state has not waived its sovereign immunity. *See* Iowa Code. § 669.14(4). Thus, even if Nunley could otherwise pursue those claims in this court, and had exhausted her administrative remedies, dismissal would be required. By contrast, Nunley's claim of intentional/negligent infliction of mental distress is *not* listed in Section 669.14(4). For that reason, the tort of intentional infliction of emotional distress is not automatically foreclosed by Section 669.14(4). *See Dickerson v. Mertz*, 547 N.W.2d 208, 213–14

(Iowa 1996). Instead, the viability of that claim in a particular case is determined by considering whether it is merely the "functional equivalent" of a claim that *is* listed in Section 669.14(4). *Minor v. State*, 819 N.W.2d 383, 406–08 (Iowa 2012).

The Iowa Supreme Court recently analyzed this issue in *Smith v. Iowa State Univ. of Science and Technology*, 851 N.W.2d 1 (Iowa 2014), a case in which a former university employee claimed he was subjected to retaliatory action and outrageous conduct after reporting alleged discrepancies in his department's billing practices. The defendants sought dismissal of an emotional distress claim on grounds that it was the functional equivalent of a defamation claim, which is listed (as "slander" and "libel") in Section 669.14(4). *Id.* at 20-21. The Court explained the "functional equivalent" analysis as follows:

> In our previous cases, including *Minor*, we have made clear that if a claim is the functional equivalent of a section 669.14 exception to the ITCA, the State has not waived its sovereign immunity. . . . Our focus is not on the terminology used to describe the claim but instead on the "type of wrong inflicted." . . . However, "[a] mere conceivable similarity between issues arising in the claim … and issues which may arise in a claim [exempted from the ITCA] is insufficient to establish the nexus of functional equivalency."

*Id.* at 21 [citations omitted]. After an exhaustive review of its prior decisions (and, by analogy, federal court decisions applying the Federal Tort Claims Act), the Court rejected the defendants' argument and declined to dismiss the emotional distress claim. *Id.* at 21-26. In reaching this holding, the Court cited favorably to federal cases holding that when a claim for negligent or intentional infliction of emotional distress "does not allege conduct beyond an excepted tort," the claim must be disallowed. *Id.* at 24-25 [citing cases]. The Court contrasted those cases with the plaintiff's claim as follows:

> We are not presented with a situation where, apart from the defamatory statements, "[t]here is no other government conduct upon which [Smith's emotional distress] claim[ ] can rest." . . . Nor does Smith's claim arise only from the disclosure of false information by the defendants. . . . There was additional wrongful conduct that was not merely derived from false

statements. The conduct engaged in by the defendants was "broader than that traditionally associated with" defamation and, therefore, cannot be said to arise out of the excluded tort of defamation, even if some of the conduct of the two claims overlaps. . . . Accordingly, we find that Smith's emotional distress claim was not barred by section 669.14(4) of the ITCA.

*Id.* at 25-26 [citations omitted].

Here, Count XII of Nunley's complaint, which describes her claim for intentional/negligent infliction of emotional distress, simply incorporates factual allegations set forth elsewhere in the complaint. Doc. No. 4 at ¶ 118. Nunley then alleges that the defendants engaged in unspecified "actions and/or inactions" that they knew, or should have known, would cause severe mental distress. *Id.* at ¶ 119. Based on these allegations, Nunley's emotional distress claim arises from the same alleged conduct that forms the basis of her battery, abuse of process, malicious prosecution and false arrest claims. As such, the emotional distress claim, as currently plead, is the functional equivalent of claims listed in Section 669.14(4) and must be disallowed. Thus, all five state law tort claims set forth in Nunley's petition are covered by the ITCA's intentional tort exception, meaning that the State of Iowa has not waived sovereign immunity as to those claims. This provides another, independent reason to recommend dismissal of Counts VIII through XII.[7]

---

[7] If Count XII was not subject to dismissal for other reasons, as explained *supra*, I would recommend that Nunley be given the opportunity to replead it, as it is at least possible that she could, in good faith, allege facts that might give rise to a claim for negligent or intentional infliction of emotion distress that is more than merely the functional equivalent of her other state law tort claims. However, because other grounds for dismissal are present, any amendment to Count XII would be futile.

*D.*      ***Should Counts I, II, IV, V, VI and VII Be Dismissed For Failure to State a Claim?***

Finally, defendants assert that all remaining counts (except Count III) must be dismissed for failure to state a claim to relief that is plausible on its face. Defendants have broken down the remaining Section 1983 claims into four separate categories. I will discuss the viability of these claims in the same manner.

*1.*      ***Counts I and II***

Both of these counts allege that the defendants "maliciously and with intent to injure Plaintiff, and/or recklessly without regard to Plaintiff's constitutional rights, unlawfully interfered with Plaintiff's constitutional rights, without any right or authority to do so, and against Plaintiff's will."[8] Doc. No. 4 at 10-11. Defendants suggest, and I agree, that in light of the dates alleged in each count, Count I appears to be based on the traffic stop while Count II is based on the arrest and detention.

Defendants contend Nunley's conviction for a traffic offense provides a complete defense to any claim for false arrest. More generally, they argue that Nunley has failed to state a plausible claim for any Fourth Amendment violation because she has not specified the precise, alleged acts that form the basis of these two counts. I will address these arguments separately.

*a.*      ***Nunley's conviction***

Defendants argue that Nunley's conviction of a safety belt violation is a "complete defense" to her claim for false arrest. I decline to dispose of that claim based solely on this argument. In the case defendants rely on, the plaintiff plead guilty to the offense for

---

[8] While Nunley asserts these claims against "All Defendants," I have determined *supra* that all section 1983 claims against the Iowa State Patrol, and against the individual defendants in their official capacities, must be dismissed. Therefore, I am only considering Nunley's section 1983 claims against Erdmann and John and Jane Doe 1-10, as Nunley has indicated she asserts claims against these defendants in their individual capacities.

which he was arrested. *See Malady v. Crunk*, 902 F.2d 10, 11 (8th Cir. 1990). The court affirmed the dismissal of the plaintiff's subsequent action for false arrest "because Malady's conviction of the offense for which he was arrested is a complete defense to a § 1983 action asserting that the arrest was made without probable cause." *Id.*

Here, based on Nunley's allegations, it is plausible to infer that she was *stopped* for a seat belt violation but was *arrested* on a charge of interference with official acts – a charge that was later dismissed. If this is correct, then Nunley was not convicted of the offense for which she was arrested. Her conviction for a seat belt violation does not, at least at this stage of the case, constitute a complete defense to her claim of false arrest.

### b. The Sufficiency of the Allegations

In addition to the factual allegations described above, Nunley makes the following allegations in support of Count I:

> 62. During the entire relevant period on September 16, 2012, when Plaintiff's [sic] were entitled to be free of unreasonable searches and seizures, through the present, the Defendants, and each of them, maliciously and with intent to injure Plaintiff, and/or recklessly without regard to Plaintiff's constitutional rights, unlawfully invaded Plaintiff's constitutional rights, without any right, authority or consent to do so, and against Plaintiff's will.

> 63. As a direct and proximate result of Defendants' acts, Plaintiff was subjected to severe mental anguish emotional distress, and prevented from attending to her necessary personal affairs and business matters during the unlawful detention.

> 64. When Defendants intruded into Plaintiff's personal affairs without reasonable basis, Plaintiff protested and informed Erdmann verbally, that his conduct was illegal.

> 65. The acts of the Defendants, under color of law and under color of their authority as state officials, as hereinabove set

out, deprived Plaintiffs, and each of them, of the privileges and immunities guaranteed to them as a citizen of the United States by the IV, V and XIV amendments of the Constitution of the United States.

Doc. No. 4 at 10. The additional allegations of Count II are:

> 67. During the entire relevant period during September 16-17, 2012, when Plaintiff's [sic] were entitled to be free of unreasonable searches and seizures, through the present, the Defendants, and each of them, maliciously and with intent to injure Plaintiff, and/or recklessly without regard to Plaintiffs constitutional rights, unlawfully interfered with Plaintiffs constitutional rights, without any right or authority to do so, and against Plaintiff's will.

> 68. As a direct and proximate result of Defendants' acts, Plaintiff was subjected to severe mental anguish, emotional distress, and prevented from attending to her necessary business.

> 69. When Defendants intruded into Plaintiff's personal affairs without reasonable basis, Plaintiff protested and informed Defendants verbally.

> 70. The acts of the Defendants, under color of law and under color of their authority as law enforcement officers, as hereinabove set out, deprived Plaintiffs, and each of them, of the privileges and immunities guaranteed to them as a citizen of the United States, by federal law and the United States.

Doc. No. 4 at 11.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013) (citing *Lind v. Midland Funding, LLC*, 688 F.3d 402, 405 (8th Cir. 2012)). A Section 1983 claim based on a Fourth Amendment violation must allege facts demonstrating an unreasonable search or seizure. *See e.g.*,

*Montoya v. City of Flandreau*, 669 F.3d 867 (8th Cir. 2012) (Section 1983 claim based on claim of excessive force in violation of the Fourth Amendment); *Stepnes v. Ritschel*, 663 F.3d 952 (8th Cir. 2011) (Section 1983 claim based on warrantless arrest, false arrest and exceeding scope of search warrant in violation of the Fourth Amendment). "Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Defendants contend Counts I and II fail to set forth any facts indicating the grounds of each claim, such as the actions or inactions by Erdmann that allegedly constitute an unreasonable search or seizure. Both counts state Defendants "maliciously and with intent to injure Plaintiff, and/or recklessly without regard to Plaintiff's constitutional rights, unlawfully interfered with Plaintiff's constitutional rights, without any right or authority to do so, and against Plaintiff's will." Doc. No. 4 at 10-11. This is nothing more than a legal conclusion. *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Defendants suggest that Count I is based on the traffic stop and Count II is based on the arrest and detention given the dates alleged in each count. However, the only unlawful conduct Nunley alleges is an "intru[sion] into Plaintiff's personal affairs without reasonable basis." Doc. No. 4 at 10-11.

These claims are presumably based on the constitutional principle that the Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Chadwick*, 433 U.S. 1, 7 (1977). It is unclear, however, what "personal affairs" Nunley refers to. Her cell phone? Her ability to take care of her child? Her ability to engage in day-to-day activities? Without

any further factual allegations, it is difficult to determine whether Nunley has alleged a legitimate expectation of privacy in her "personal affairs," and therefore, whether she has a plausible claim. It is also difficult to determine whether the "intrusion" could be considered unreasonable under the circumstances without knowing what it is.

To the extent Nunley's claims are based on the traffic stop, they fail to state a plausible claim to relief. Stopping a vehicle constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). It is not unconstitutional unless it is "unreasonable under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation as occurred." *Id.* "It is well established that even a minor traffic violation provides probable cause for a traffic stop." *United States v. Guzman*, 454 F. App'x 531, 535 (8th Cir. 2012) (finding traffic stop was valid where officer observed the driver not wearing a seat belt). *See also United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) (traffic stop was valid based on failure to wear seatbelt "even if the police would have ignored the traffic violation but for their suspicion that greater crimes [were] afoot."). An officer must have "at least articulable and reasonable suspicion" of a violation to justify a traffic stop. *Delaware*, 440 U.S. at 663.

Nunley states in her complaint that "[a]pparently, believing that Plaintiff was driving her vehicle without the use of a seatbelt, [Erdmann] pulled his police cruiser behind Plaintiff's vehicle and activated his emergency lights." Doc. No. 4 at 3. Nunley does not contend that she was wearing a seatbelt or that Erdmann's suspicion was otherwise unreasonable or that he did not have probable cause to initiate a traffic stop. Given that Nunley has essentially admitted Erdmann had probable cause for the traffic stop, I find that she has failed to state a plausible claim to relief under Section 1983 based on the traffic stop.

As for an alleged unlawful arrest and detention, "a warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause . . . ." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). Probable cause exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ulrich*, 715 F.3d at 1059. Courts should "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008).

Nunley has failed to allege facts that create "more than a sheer possibility that a defendant has acted unlawfully" with regard to her arrest and incarceration. *Ashcroft*, 556 U.S. at 678. While she contends the charge of "Interference with Official Acts Causing Injury" was "baseless," she does not allege that the *arrest* was baseless or otherwise indicate why there was no probable cause. *See Lambert v. City of Dumas*, 187 F.3d 931, 935 n.6 (8th Cir. 1999) ("The relevant inquiry is whether the arresting officers had probable cause to arrest [plaintiff] at the time of the arrest, not whether the officers' decision to arrest [plaintiff] can be justified by information learned after the arrest."). While a complaint does not need "detailed factual allegations," a plaintiff must provide the grounds of his or her entitlement to relief. *Twombly*, 550 U.S. at 555.

Nunley's failure to allege specific, critical factual details is fatal with regard to Counts I and II, as those counts are currently plead. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). While Nunley's complaint is to be construed liberally and all facts must be accepted as true, the court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (quoting *Dunn v. White*,

880 F.2d 1188, 1197 (10th Cir. 1989)). Even accepting all the facts alleged in the complaint as true and construing all reasonable inferences in favor of Nunley, I find she has failed to state a claim under 42 U.S.C. § 1983 based on either (a) an intrusion into a legitimate expectation of privacy, (b) an unlawful traffic stop or (c) an unlawful arrest and detention.

For this reason, I recommend that Counts I and II be dismissed. However, I find that it is at least possible that Nunley can cure the pleading deficiencies by amendment. Thus, and particularly in light of her status as a *pro se* litigant, I further recommend that she be granted the opportunity to file an amended complaint with regard to those counts.

### 2.    *Count IV*

In Count IV, Nunely contends her due process rights were violated in connection with the events described in her complaint. Defendants argue Count IV must be dismissed to the extent it is based on the traffic stop because, again, it does not identify the specific acts that form the basis of the claim. They also argue that to the extent the due process claim is based on the use of excessive force, it overlaps with Count III, and should be dismissed.

In addition to the general factual allegations, Nunley sets forth the following allegations in support of Count IV, which she notes is a Section 1983 claim based on "Violation of Plaintiff's Due Process Rights":

> 77.    During the entire relevant traffic stop occurring on September 16, 2012, when Plaintiff's [sic] were entitled to due process of law from a law enforcement officer, through the present, without appropriate authorization, the Defendants, and each of them, maliciously and with intent to injure Plaintiff, and/or recklessly without regard to Plaintiff's constitutional rights, unlawfully prevented, impeded, or otherwise interfered with Plaintiff's constitutional right to due process without right or authority to do so, and against Plaintiff's will.

78.  As a direct and proximate result of Defendants' acts, Plaintiffs, were subjected to physical abuse, severe mental anguish, emotional distress, and prevented from attending to her necessary personal affairs and business matters during the period from her termination to the present.

79.  When Defendants intruded into Plaintiff's personal affairs without reasonable basis, Plaintiff protested and informed Defendants verbally, and in writing, that she had committed no crime or offense and she offered proof that she was entitled to access and copies of her files.

80.  The acts of the Defendants, under color of law and under color of their authority as police officers, as hereinabove set out, deprived Plaintiffs, and each of them, of the privileges and immunities guaranteed to them as a citizen of the United States, by Amendments IV and XIV of the Constitution of the United States.

Doc. No. 4 at 13-14.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The United States Supreme Court has stated that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*All* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original)).

Count IV is nearly identical to Count III, which alleges excessive force in violation of the Fourth Amendment and is not challenged by the present motion. Due to the similarity between these counts, and the fact that the allegations in Count IV must be analyzed under Fourth Amendment standards rather than concepts of substantive due process, I recommend that Count IV be dismissed. *See Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 23 F. Supp. 2d 974, 1009 (N.D. Iowa 1998) ("a claim that merely recasts the same elements under the guise of a different theory may be stricken as redundant pursuant to Rule 12(f)."). Because it does not appear that additional factual allegations could give rise to a plausible claim, I do not recommend that Nunley be granted the opportunity to amend her complaint with regard to Count III.

### 3.    *Count V*

Count V alleges a violation of the right to family integrity. Defendants contend that this claim arises from Nunley's arrest and argue that because she has failed to allege facts that state a plausible claim of unlawful arrest, that arrest could not have violated any rights she may have had to family integrity. Defendants also argue that Nunley has failed to allege sufficient facts demonstrating that defendants' conduct was aimed at interfering with the parental relationship or was so egregious as to "shock the conscience" of the "community's sense of fair play and decency." Doc. No. 8-1 at 16 (citing *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011)).

In addition to the general factual allegations, Nunley asserts the following in support of Count V:

> 82.    During the entire relevant period beginning with the traffic stop occurring on September 16, 2012, and continuing through the time when Plaintiff Brandy was released from incarceration resulting from her bogus arrest, Plaintiff was separated from her child in violation of Plaintiffs right to family, without appropriate authorization, the Defendants, and each of them, maliciously and with intent to injure Plaintiff,

and/or recklessly without regard to Plaintiff's constitutional rights, unlawfully prevented, impeded, or otherwise interfered with Plaintiff's constitutional right to family integrity, without any right or authority to do so, and against Plaintiff's will.

83.   During the entire relevant period, Plaintiffs' [sic] and each of them were entitled to the comfort, association, presence, direction and enjoyment of each other.

84.   However, the Defendants, and each of them, maliciously and with intent to injure Plaintiff, and/or recklessly and without regard to Plaintiff's constitutional rights, unlawfully interfered with Plaintiff's constitutional right to family integrity, without any right or authority to do so, and against Plaintiff's will.

85.   As a direct and proximate result of Defendants' acts, Plaintiff, was subjected to severe mental anguish, emotional distress, and prevented from attending to her necessary personal affairs and business matters during the period of unlawful activity.

86.   Defendants intruded into Plaintiff's personal affairs without reasonable basis, Plaintiff protested and informed Defendants, that the Defendant's actions were inappropriate and offered to prove so.

87.   The acts of the Defendants, under color of law and under color of their authority as state officials, as hereinabove set out, deprived Plaintiff, and each of them, of the privileges and immunities guaranteed to them as a citizen of the United States, including by Amendments IV, V and XIV amendments of the Constitution of the United States.

Doc. No. 4 at 14-15.

"Parents have a liberty interest in the care, custody, and management of their children." *Swipies v. Kofka*, 348 F.3d 701, 703 (8th Cir. 2003). "To amount to a violation of substantive due process . . . the harmful conduct must 'shock [ ] the conscience' or 'offend the community's sense of fair play and decency.'" *Rosenbaum*,

663 F.3d at 1079. "A state may not interfere with this liberty interest, and indeed the violation of the right to family integrity is subject to remedy under § 1983. *Id.* (citing *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985)). The liberty interest is not absolute however, and the interest of the parent must be balanced against the interest of the state and, when conflicting, against the interests of the child. *Woodrum v. Woodward Cnty., Ok.*, 866 F.2d 1121, 1125 (9th Cir. 1989); *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1370-71 (8th Cir. 1996).

Nunley alleges that the separation from her child during the traffic stop, arrest and incarceration (based on the so-called "bogus" arrest) violated her right to family integrity. As discussed with regard to Counts I and II, however, Nunley has not made allegations that give rise to a plausible claim that her stop, arrest or incarceration were unlawful. As such, I recommend that Count V be dismissed, as currently plead. However, I further recommend that Nunley be granted the opportunity to file an amended complaint with regard to Count V, as it is at least possible that she can cure this defect by alleging additional facts.

### 4.    *Counts VI and VII*

Counts VI and VII raise claims of "supervisory liability" under Section 1983. In Count VI Nunley alleges the State of Iowa authorizes troopers "to engage in grossly unconstitutional actions" and in Count VII she alleges the State fails to provide adequate training. Count VI is alleged against "All Iowa Highway Patrol Supervisors Involved in Present Case" and Count VII is alleged against "All Iowa Highway Patrol and its agents Supervisors Involved in Plaintiff's Case." *Id.* at 15, 17. Defendants allege that these claims only amount to conclusory allegations and are barred by the Eleventh Amendment to the extent they seek to impose liability on the State. They also argue that vicarious liability is inapplicable in Section 1983 actions and Nunley has failed to identify any individual whom she believes engaged in the alleged misconduct.

As stated *supra*, all of Nunley's Section 1983 claims against the Iowa State Patrol should be dismissed because a state and its officials are not a "person" under the statute and are entitled to immunity under the Eleventh Amendment. Moreover, the Eighth Circuit has noted:

> Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Thus, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 1949. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Because Nunley does not allege these counts against any Iowa State Patrol supervisory employee in his or her individual capacity, I recommend that Counts VI and VII be dismissed. I further find that it is unlikely that additional factual allegations could give rise to a plausible claim with regard to either of these counts. As such, I do not recommend that Nunley be granted the opportunity to amend her complaint with regard to Counts VI and VII.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that defendants' partial motion (Doc. No. 8) to dismiss be **granted** as follows:

1. The motion should be **granted** with regard to any and all claims Nunley purports to assert on behalf of her minor child, TJN, and all such claims should be **dismissed without prejudice**.

2. The motion should be **granted** with regard to all claims asserted against the Iowa State Patrol (sued as the Iowa Highway Patrol), and that defendant should be **dismissed with prejudice** from this case.

3.     The motion should be **granted** with regard to all of Nunley's state law tort claims (Counts VII, VIII, IX, X, XI and XII) and those claims should be **dismissed with prejudice**.

4.     The motion should be **granted** with regard to Counts I, II and V, and those counts should therefore be **dismissed** unless Nunley is able, by amendment, to cure the pleading deficiencies and allege facts that give rise to plausible claims for relief as to those count.

5.     The motion should be **granted** with regard to Counts IV, VI and VII and those counts should be **dismissed** with prejudice.

If this recommendation is adopted in full, Count III (the Section 1983 claim alleging excessive force) would be the only claim currently pending, and it would be pending only against Erdmann and the "Doe" defendants. Counts I, II and V would be eligible to return to this case, against Erdmann and the "Doe" defendants, if Nunley is able to craft an amended complaint with additional factual allegations that meet the plausibility standard. All other claims would be dismissed.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 8th day of October, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE